**UNITED STATES of America**

v.

**Andres GIROSKY–GARIBAY**

**No. EP–01–CR–1238–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 27, 2001.

James N. Langell, Federal Public Defender's Office, Andres Girosky–Garibay, El Paso, TX, for Andres Girosky–Garibay (1), defendants.

Thomas Clair Roepke, United States Attorney's Office, El Paso, TX, for U.S. Attorneys.

## ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant Andres Girosky–Garibay's Motion to Dismiss the Indictment filed in the above-captioned cause on October 3, 2001.[1]

On July 18, 2001, Defendant was indicted pursuant to 8 U.S.C. § 1326.[2] Thereafter, Defendant filed the instant Motion to Dismiss challenging the validity of his prior order of removal from the United States upon which the Government bases its charge of illegal re-entry after deportation pursuant to 8 U.S.C. § 1326. The Government filed a Response on October 12, 2001. On October 16, 2001, the Court held a hearing to consider the Motion.

After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons set forth below.

## BACKGROUND

Defendant, a citizen of Mexico, became a Lawful Permanent Resident in January of 1982. On July 10, 1998, Defendant was convicted in the 168th District Court of El Paso County of felony offense of driving while intoxicated ("DWI"), 3rd Degree, in violation of 6701L–1 of the Texas Motor Vehicle Law. Defendant was sentenced to five years of incarceration, subsequently suspended, and was placed on community supervision for five years. Based on this conviction, the Immigration and Naturalization Service ("INS") initiated removal proceedings in September of 1998 by issuing a Notice to Appear. Following an individual hearing, an Immigration Judge ("IJ") ordered Defendant removed from the United States on November 23, 1998. The IJ found that the felony DWI conviction was a "crime of violence" as defined by 8 U.S.C. § 1101(a)(43)(F)[3] and thus an

---

1. Certain citations were modified for purposes of publication.

2. Title 8 U.S.C. § 1326(a) authorizes a prison term of up to two years and a possible fine for any alien who, after having been excluded, deported, removed or having departed the United States while an order of exclusion, deportation, or removal was outstanding, enters, attempts to enter, or is found in the

United States, unless prior to the alien's reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission.

3. 8 U.S.C. § 1101(a)(43)(F) defines an aggravated felony as a "crime of violence" for which the term of imprisonment is at least one year.

aggravated felony. The IJ further held that because Defendant had been convicted of an aggravated felony, he was not eligible for Cancellation of Removal pursuant to 8 U.S.C. § 1229b(a). Defendant appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which upheld the IJ's decision. Defendant was deported on January 28, 2000.

According to the Indictment in the instant case, subsequent to his removal from the United States, Defendant re-entered the United States on June 30, 2001. On July 18, 2001, Defendant was indicted pursuant to 8 U.S.C. § 1326(a) and (b)(1).[4] The Indictment further alleges that Defendant, who had been excluded, deported, and removed from the United States, had not received the consent of the Attorney General to re-apply for admission before he attempted to enter, entered, or was found in the United States. The Indictment includes a Notice of a Penalty Enhancement filed pursuant to 8 U.S.C. § 1326(b)(1) alleging that Defendant's removal was subsequent to Defendant's conviction for the felony offense of DWI.[5]

## DISCUSSION

■ Defendant filed the instant Motion arguing that his removal proceeding was so fundamentally unfair and prejudicial in violation of his due process rights that under *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), his removal cannot be used as an element in this prosecution. In Defendant's underlying removal proceedings, the IJ held that felony DWI in Texas is an aggravated felony. Based on this convic-

tion and a finding that Defendant was not eligible for relief, the IJ removed Defendant from the United States. Defendant primarily argues that the underlying order of removal violates his due process rights because the IJ erroneously interpreted the law. Specifically, after Defendant was removed from the United States, the Fifth Circuit, in *United States v. Chapa–Garza*, 243 F.3d 921, 927 (5th Cir.2001), held that a felony DWI conviction in Texas is not a crime of violence and hence not an aggravated felony.

In order to successfully challenge the use of a prior removal order in a prosecution for illegal re-entry under 8 U.S.C. § 1326, Defendant must satisfy both the requirements of *United States v. Mendoza–Lopez* and 8 U.S.C. § 1326(d). In *Mendoza–Lopez*, the Supreme Court held that a Defendant may challenge the validity of an underlying order of deportation in a criminal prosecution in which that prior deportation is an element of the crime. *Mendoza–Lopez*, 481 U.S. at 839, 107 S.Ct. at 2155. The Fifth Circuit, interpreting *Mendoza–Lopez*, held that in order to successfully challenge the validity of an underlying deportation order, an alien must establish that: "(1) the prior hearing was 'fundamentally unfair'; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir.2000) (citations omitted). If an alien fails to establish one of the elements, the court need not consider the others. *United States v. En-*

---

4. Title 8 U.S.C. § 1326(b)(1) authorizes a prison term of up to ten years for any alien described in § 1326(a) if the initial deportation occurred subsequent to the commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony, other than an aggravated felony.

5. The Court notes that although Defendant was removed from the United States based on this conviction being classified as an aggravated felony, in this criminal prosecution, the government is not requesting a penalty enhancement based on an aggravated felony conviction.

*carnacion–Galvez,* 964 F.2d 402, 407 (5th Cir.1992) (citations omitted).

According to the Fifth Circuit, Congress effectively codified its interpretation of *Mendoza–Lopez* in 8 U.S.C. § 1326(d), which provides:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C.A. § 1326(d)(West Supp.2001); *See also United States v. Benitez–Villafuerte,* 186 F.3d 651, 658 n. 8 (5th Cir.1999).

### A. The Retroactive Application of *United States v. Chapa–Garza,* 243 F.3d 921 (5th Cir.2001)

In Defendant's underlying deportation proceedings, the IJ found that a felony DWI in Texas was an aggravated felony under the Illegal Immigration and Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The IJ's decision was consistent with the decision of the Board of Immigration Appeals ("BIA") in *In re Puente–Salazar,* in which that court held that a felony DWI in Texas was a "crime of violence" and therefore an aggravated felony under 8 U.S.C.A. § 1101(a)(43)(F).

*In re Puente–Salazar,* Inter. Dec. 3412, 1999 WL 770709 (B.I.A.1999).

In *Chapa–Garza,* the Fifth Circuit reached a different conclusion. The Court, recognizing that its decision was inconsistent with *Camacho–Marroquin v. INS.,* held that a Texas conviction for felony DWI is not classifiable as a crime of violence under 8 U.S.C. § 1101(a)(43)(F) and is therefore not an aggravated felony. *Chapa–Garza,* 243 F.3d at 927; *see Camacho–Marroquin v. INS,* 188 F.3d 649, 652 (5th Cir.1999), *opinion withdrawn Camacho–Marroquin v. INS,* 222 F.3d 1040 (5th Cir.2000)(holding that a felony DWI in Texas was a "crime of violence" and therefore an aggravated felony under IIRIRA). Under 8 U.S.C. § 1101(a)(43)(F), an aggravated felony is defined as "a crime of violence (as defined in Section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year." The Court, interpreting the statute, determined that a Texas DWI conviction is not a crime of violence as defined by 18 U.S.C. § 16(b).[6] *Id.*

As a preliminary matter, the Government contends that the Fifth Circuit's decision in *Chapa–Garza* may not be applied retroactively because it is a new rule of civil law. The Government, citing *Harper v. Virginia Depart. of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993), argues that new rules of civil law can only be applied retroactively in those cases still on direct review.

The Court finds that the Government's argument is without merit. Even assuming that the Court in *Chapa–Garza* an-

---

**6.** Pursuant to 18 U.S.C. § 16, the term "crime of violence" is defined as:

"(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or proper-

ty of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

nounced a new rule of civil law, the holding in *Harper* could not apply to challenges to the validity of deportation proceedings filed pursuant to *Mendoza–Lopez* or 8 U.S.C. § 1326(d). *Harper* requires that in order to apply a civil rule retroactively, the case must still be on direct review. However, the requirements of *Mendoza–Lopez* and 8 U.S.C. § 1326(d) preclude the application of *Harper* because in order to succeed under these actions, a Defendant must demonstrate that there was no opportunity for meaningful direct review.

■ In any event, the Court is of the opinion that the Government is incorrect in classifying the decision in *Chapa–Garza* as a new rule of civil law. The Fifth Circuit in *Chapa–Garza* determined the meaning of "a crime of violence;" it did not announce a new rule of civil law. A court's *interpretation* of a statute may be applied retroactively. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311, 114 S.Ct. 1510, 1518, 128 L.Ed.2d 274 (1994) (stating that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student.") (citations omitted). In *United States v. Lopez*, 248 F.3d 427 (5th Cir.2001), the Fifth Circuit applied the Supreme Court's holding in *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) retroactively to a Motion to Vacate, Set Aside, or Correct his Sentence filed pursuant to 28 U.S.C. § 2255. The Court found that the bar to the retroactive application of "new constitutional rules of criminal procedure" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) was inapplicable, "because *Richardson* consisted of the Supreme Court's interpretation of a statute." *Lopez*, 248 F.3d at 431–32; *see also United States v. McPhail*, 112 F.3d 197 (5th Cir.1997)(ruling that the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), could be applied for the first time on collateral review). *See also Rivers*, 511 U.S. at 312–13, 114 S.Ct. at 1519 (stating that "[a] judicial construc-

tion of a statute is an authoritative statement of what the statute meant before as well as after the decision in the case giving rise to the construction."). Accordingly, the Court is of the opinion that the Fifth Circuit's decision in *Chapa–Garza* applies "retroactively" in this case.

**B. The Requirements of *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir.2000)**

**1. Fundamental Fairness**

■ Under the test established in *Lopez–Vasquez*, Defendant must first demonstrate that the removal proceeding was fundamentally unfair. *Lopez–Vasquez*, 227 F.3d 476, 483. In other words, Defendant must demonstrate that the defect in the removal proceeding resulted in "a denial of justice" or a denial of due process of law. *United States v. Hernandez–Avalos*, 251 F.3d 505, 508 (5th Cir.2001), *cert. denied Hernandez–Avalos v. United States*, —— U.S. ——, 122 S.Ct. 305, —— L.Ed.2d ——, 2001 WL 992061 (2001). If one of the elements deemed essential to due process is absent from the removal proceeding, then Defendant is denied due process of law. *Animashaun v. INS*, 990 F.2d 234, 238 (5th Cir.1993) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981)); *see also Olabanji v. INS.*, 973 F.2d 1232, 1234 (5th Cir.1992) (finding deportation proceedings to be fundamentally unfair where immigrant was denied the right to cross-examine a witness); *United States v. Campos–Asencio*, 822 F.2d 506, 510 (5th Cir. 1987) (finding that, under some circumstances, a denial of counsel or the right to obtain counsel could amount to a denial of due process).

Defendant contends that the removal proceeding was fundamentally unfair because the IJ based her decision on an erroneous interpretation of the law. In *Hernandez–Avalos*, the Fifth Circuit addressed a similar issue regarding whether an alleged erroneous interpretation of the law rendered the underlying removal proceedings fundamentally unfair. *Hernan-*

*dez–Avalos,* 251 F.3d at 506. There, the INS found that a Colorado felony drug conviction was an aggravated felony under IIRIRA, because it was an illicit drug trafficking crime,[7] and expeditedly removed Hernandez–Avalos from the United States based on this conviction. *Hernandez–Avalos,* 251 F.3d at 508. In challenging his subsequent prosecution for illegal re-entry, Hernandez–Avalos argued that the earlier removal proceeding was fundamentally unfair because the INS erroneously interpreted the law with regard to the drug trafficking charge. Specifically, Hernandez–Avalos argued that the INS failed to follow BIA decisions that held that state felony drug convictions were not aggravated felonies. *Id.* The Fifth Circuit, finding that the BIA decisions were incorrect, held that the alleged error made by the INS did not render the proceedings fundamentally unfair because ultimately, the INS's interpretation was correct. *Id.*

Although raising similar issues as those in this case, that an erroneous interpretation of the law can render underlying proceedings fundamentally unfair, the holding in *Hernandez–Avalos* is distinguishable from the instant matter. In *Hernandez–Avalos,* the Fifth Circuit found that the INS's interpretation was correct. Here, the IJ's finding that a felony DWI in Texas is an aggravated felony was incorrect, having been effectively overruled, rather than upheld, by the Fifth Circuit.

■ The Court finds that in the instant case, the IJ, following BIA precedent, "erroneously applied the law" in determining that Girosky–Garibay was removable based on an aggravated felony conviction. Moreover, an erroneous application of the law is a type of defect that renders a removal proceeding fundamentally unfair and results in a denial of justice. *See*

*Mendoza–Lopez,* 481 U.S. at 845, 107 S.Ct. at 2159 *See also Mendoza–Lopez,* 481 U.S. at 845, 107 S.Ct. at 2159 (Rehnquist, C.J., White, J., O'Connor, J., dissenting) (stating that "[c]onspicuously absent from respondents' arguments to this Court is any suggestion that the Immigration Law Judge employed improper procedures or *erroneously applied the law* in determining that respondents were deportable.")(emphasis added). Because of the IJ's erroneous application, Defendant was unlawfully deported. Accordingly, the Court finds that the IJ and BIA's erroneous application of the law in this case rendered the proceedings fundamentally unfair and violated Defendant's due process rights.

The Government, however, contends that the IJ's interpretation was not fundamentally unfair because the IJ followed controlling case law, including BIA precedent. In other words, the IJ did not disregard the law. The Government's argument is without merit, however, because Girosky–Garibay's removal proceeding was rendered unfair by the IJ's and the BIA's erroneous interpretation of the law. Additionally, it appears that the opposite of what the government contends is true. The IJ and the BIA "disregarded" the law by incorrectly determining that a felony DWI in Texas is a "crime of violence" and thus an aggravated felony.

### 2. Judicial Review

■ Defendant must demonstrate that the defective removal proceeding deprived him of the right to judicial review. In *Mendoza–Lopez,* the Supreme Court held that, if an "administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the

---

**7.** Pursuant to 8 U.S.C. § 1101(a)(43)(B), a conviction for "illicit drug trafficking in a controlled substance (as defined in section 802 Title 21) including a drug trafficking crime (as defined in section 924(c) of Title 18)" is an aggravated felony.

administrative proceedings." *Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. at 2154. If the defects in the deportation proceedings foreclose judicial review, then "an alternative means of obtaining judicial review must be made available." *Id.* A court's review of the deportation proceedings in "any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense" is an alternate method of judicial review. *Id.* at 839, 107 S.Ct. at 2155.

The Supreme Court found that the defect in the underlying proceeding had effectively denied Mendoza–Lopez direct review of the deportation order. *Id.* at 837, 107 S.Ct. at 2155. The Court found that "[the] Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation." *Id.* In other words, because the individuals were "deprived of their right to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained ...," they were deprived of their right to judicial review. *Id.* at 842, 107 S.Ct. at 2157. The Court concluded that "the fundamental procedural defects of the deportation hearing ... rendered direct review of the Immigration Judge's determination unavailable to respondents." *Id.* at 841, 107 S.Ct. at 2157.

The Court is of the opinion that, in this case, the defects in the removal proceedings rendered direct review of the IJ's determination "unavailable." The IJ held that Defendant had been convicted of an aggravated felony and that he was not eligible for Cancellation of Removal. Defendant appealed this decision to the BIA, which affirmed the IJ's decision. Although Defendant technically received some direct review of his removal proceedings, the review the Defendant received was not "meaningful" because both the IJ and the BIA decisions, which were effectively overruled by *Chapa–Garza*, applied an erroneous interpretation of the law. Furthermore, Defendant was unable to obtain habeas relief because at that time, the Fifth Circuit concluded that IIRIRA stripped the federal courts of habeas jurisdiction under 28 U.S.C. § 2241. *See Max–George v. Reno*, 205 F.3d 194, 197–98 (5th Cir.2000), *vacated Max–George v. Ashcroft*, —— U.S. ——, 121 S.Ct. 2585, 150 L.Ed.2d 746 (2001).

### 3. Exhaustion of Administrative Remedies

Defendant must demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C.A. § 1326(d). The Fifth Circuit has held that to exhaust administrative remedies, an immigrant must raise the issues on appeal at the administrative level. *Townsend v. United States Department of Justice INS*, 799 F.2d 179, 180 (5th Cir.1986); *see also Witter v. INS*, 113 F.3d 549, 554 (5th Cir. 1997). The Government argues that Defendant failed to exhaust his administrative remedies because Defendant did not seek judicial review of the BIA's decision, either by appealing this decision to the Fifth Circuit or by filing a habeas petition pursuant to 28 U.S.C. § 2241.

The Court is of the opinion that Defendant exhausted his administrative remedies by appealing the IJ's decision to the BIA. Because Defendant was only required to raise his appeal at the administrative level, Defendant was not required to appeal to the Fifth Circuit or file a habeas petition. In any event, it appears that at the time of Defendant's appeal, the Fifth Circuit's opinion in *Camacho–Marroquin* was still in effect. *Camacho–Marro-*

*quin*, 188 F.3d 649, 652, *opinion withdrawn Camacho–Marroquin*, 222 F.3d 1040 (holding that a felony DWI in Texas was a "crime of violence" and therefore an aggravated felony under IIRIRA) A habeas petition would have also been futile because the Fifth Circuit held that the federal courts did not have habeas jurisdiction under IIRIRA. *See Max–George*, 205 F.3d at 197–98.

### 4. Actual Prejudice

 Finally, Defendant must show that he suffered actual prejudice as a result of the IJ's erroneous interpretation of the law. "The law is clearly established that a showing of actual prejudice is required to succeed in such a collateral attack." *Benitez–Villafuerte*, 186 F.3d at 658; *see also United States v. Encarnacion–Galvez*, 964 F.2d at 407. "A showing of prejudice means 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Benitez–Villafuerte*, 186 F.3d at 658–59 (citations omitted); *see also United States v. Lopez–Vasquez*, 227 F.3d 476 (5th Cir.2000) (upholding the district court's ruling that the defendant failed to prove actual prejudice by not demonstrating that the defendant was eligible for voluntary departure). "In short, '[i]f the defendant was legally deportable and, despite the INS's errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326." *Benitez–Villafuerte*, 186 F.3d at 658 (citing *United States v. Galicia–Gonzalez*, 997 F.2d 602, 603 (9th Cir. 1993)).

 Defendant is required to show a reasonable likelihood that he would not have been deported. *Encarnacion–Galvez*, 964 F.2d at 407. Defendant argues that had the IJ correctly interpreted the law, he would not have been removable and, at the least, he would be eligible for Cancellation of Removal. The Court agrees with Defendant. At the time of Defendant's removal proceedings, Defendant would not have been deportable based on his criminal convictions. Title 8 U.S.C. § 1227 identifies that class of aliens who are deportable, including the types of criminal offenses that render an immigrant deportable. A Texas conviction for DWI does not fit under the applicable criminal categories outlined in 8 U.S.C. § 1227(a) (2).

Even if an IJ found Defendant deportable for his convictions, at the time of the removal proceeding, there was a reasonable likelihood that he could have been granted Cancellation of Removal under 8 U.S.C. § 1229b. To demonstrate eligibility for Cancellation of Removal, Defendant must show that he has: 1) been an "alien lawfully admitted for permanent residence for not less that 5 years; 2) has resided in the United States continuously for 7 years after having been admitted in any status, and 3) has not been convicted of an aggravated felony." 8 U.S.C.A. § 1229b (West Supp. 2001).

Defendant became a Lawful Permanent Resident in January of 1982. Defendant maintained this status for seventeen years. Defendant can therefore demonstrate the first requirement by having shown that he was a lawful permanent resident for five years. Defendant has met the second requirement, that he resided in the United States for seven years. The Government contends that Girosky–Garibay's first conviction was in 1997. Because Girosky–Garibay had no convictions from 1982 until 1997, and his immigration proceedings were initiated in 1998, he can demonstrate continuous presence for seven years. *See* 8 U.S.C. § 1229b(d)(1) (providing that the continuous presence necessary for eligibility for Cancellation of Removal ends upon the filing of a Notice to Appear and upon

conviction of certain criminal offenses). Because felony DWI is not an aggravated felony, Defendant has demonstrated the third requirement, that he has no aggravated felony convictions.

Finally, Defendant has demonstrated that there is a likelihood that the IJ would grant him Cancellation of Removal based on the equities in his case. In *In re C–V–T,* the BIA held that an applicant for Cancellation of Removal pursuant to 8 U.S.C. 1229b(a) must demonstrate that he or she warrants relief as a matter of discretion. *In Re C–V–T,* Inter. Dec. 3342, 1998 WL 151434 (B.I.A.1998). The BIA held that the balancing test used in *Matter of Marin,* 16 I & N Dec. 581, 584–85 (BIA 1978) to determine discretionary eligibility for the former 212(c) relief, 8 U.S.C. § 1182(c)(repealed 1996), should be utilized for Cancellation of Removal. *Id.* That test requires a Court to review the record as a whole and "balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf to determine whether the granting of . . . relief appears in the best interest of this country." *Id.*

In the instant case, Defendant has been a Lawful Permanent Resident for seventeen years. Defendant married a United States Citizen, and helped raise her five children who are all citizens of the United States. Girosky–Garibay's mother is a Lawful Permanent Resident residing in El Paso and six of his brothers and sisters are legal residents of the United States. Defendant also successfully completed the Substance Abuse Program at the Inner Resources Recovery Center for Men. The primary adverse factor in Defendant's case is his history of criminal convictions.

The Court is of the opinion that Defendant has demonstrated that an Immigration Judge may find that the positive factors in his case outweigh the negative factors. Defendant has therefore demonstrated that there is a reasonable likelihood that an IJ would grant Cancellation of Removal. Accordingly, the Court finds Defendant has demonstrated that he suffered actual prejudice as a result of the IJ's erroneous application of the law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Andres Girosky–Garibay's "Motion to Dismiss the Indictment" is **GRANTED.**

**IT IS FINALLY ORDERED** that this case is **DISMISSED.**